Slip Op. 09-36

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| MAY FOOD MANUFACTURING dba MRS. MAY'S NATURALS, | : : : : | |
| Plaintiff, | : : | Before: Jane A. Restani, Chief Judge |
| v. | : : | Court No. 06-00329 |
| UNITED STATES, | : : | |
| Defendant. | : : : | |

**OPINION**

[Defendant's motion for summary judgment granted. Plaintiff's cross-motion for summary judgment denied.]

Dated: May 1, 2009

<u>Peter S. Herrick, P.A.</u> (Peter S. Herrick) for the plaintiff.

<u>Michael F. Hertz</u>, Acting Assistant Attorney General; <u>Barbara S. Williams</u>, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (<u>Jason M. Kenner</u>, <u>Gardner B. Miller</u>, and <u>Mikki Cottet</u>); <u>Beth Brotman</u>, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of counsel, for the defendant.

Restani, Chief Judge: This matter is before the court on cross-motions for summary judgment by plaintiff May Food Manufacturing doing business as Mrs. May's Naturals ("Mrs. May's") and defendant United States ("the Government") pursuant to USCIT Rule 56. The Government asserts that the United States Bureau of Customs and Border Protection ("Customs") properly classified the subject merchandise as prepared almonds under subheading

2008.19.40 of the Harmonized Tariff Schedule of the United States ("HTSUS").[1]  Mrs. May's asserts that the subject merchandise is an article returned to the United States after being exported for alterations and therefore should be classified under subheading 9802.00.50.[2]

**BACKGROUND**

Mrs. May's manufactures the subject merchandise, "Almond Crunch" and "All Natural Almond Crunch" (collectively, "Almond Crunch"), a type of sweet snack food called almond brittle.  (Def.'s Statement of Material Facts as to Which There Are No Genuine Issues to Be Tried ("Def.'s Statement of Facts") ¶¶ 1–3; Pl.'s Statement of Material Facts for Which There Is a Genuine Issue to Be Tried ("Pl.'s Resp. Statement of Facts") ¶¶ 1–3.)  Mrs. May's purchases shelled, raw almonds from growers in California and exports the almonds to China (Def.'s Statement of Facts ¶¶ 5–6; Pl.'s Resp. Statement of Facts ¶¶ 5–7), where they are

---

[1] The relevant portion of Chapter 20 of the HTSUS reads:

| | |
|---|---|
| 2008 | Fruit, nuts and other edible parts of plants, otherwise prepared or preserved, whether or not containing added sugar or other sweetening matter or spirit, not elsewhere specified or included: |
| |     Nuts, peanuts (ground-nuts) and other seeds, whether or not mixed together: |
| |     . . . . |
| 2008.19 |         Other, including mixtures: |
| |     . . . . |
| 2008.19.40 |             Almonds . . . . |

[2] The relevant portion of Chapter 98 of the HTSUS reads:

Articles returned to the United States after having been exported to be advanced in value or improved in condition by any process of manufacture or other means:
    Articles exported for repairs or alterations:
    . . . .

| | |
|---|---|
| 9802.00.50 |         Other . . . . |

"manufactured into Almond Crunch" (Pl.'s Resp. Statement of Facts ¶ 7; see also Def.'s Statement of Facts ¶ 6). In China, the almonds are hand-sorted, roasted for flavor, and mixed with rice malt, sugar, and salt. (Def.'s Statement of Facts ¶¶ 8–9; Pl.'s Resp. Statement of Facts ¶¶ 8–9; Wong Dep. 28:7–8, Apr. 24, 2008, Def.'s Mot. for Summ. J. Ex. B.) The mixture is then rolled flat, cut into cubes, and bagged. (Def.'s Statement of Facts ¶ 10; Pl.'s Resp. Statement of Facts ¶ 10.) It is then imported back into the United States as Almond Crunch. (Def.'s Statement of Facts ¶ 11; Pl.'s Resp. Statement of Facts ¶ 11.)

Mrs. May's requested that Customs classify Almond Crunch as an article returned to the United States after being exported for alterations, which is subject to a duty only upon the value of the alterations, under subheading 9802.00.50, HTSUS. In ruling letters NY L82122 (Feb. 9, 2005) and NY L88301 (Nov. 3, 2005), Customs denied the requests and classified Almond Crunch under subheading 2008.19.40, HTSUS, as prepared almonds, which are subject to a duty rate of 32.6 cents per kilogram. Customs liquidated the entries at issue at that duty rate, and Mrs. May's filed protests, which Customs denied. (Summons 2–3.) Mrs. May's then commenced the present action. Both parties now move for summary judgment pursuant to USCIT Rule 56.

**JURISDICTION AND STANDARD OF REVIEW**

The court has jurisdiction pursuant to 28 U.S.C. § 1581(a). Summary judgment is appropriate if "there is no genuine issue as to any material fact," and "the movant is entitled to judgment as a matter of law." USCIT R. 56(c). The proper construction of a tariff provision is a question of law, and whether the subject merchandise falls within a particular tariff provision is a question of fact. Franklin v. United States, 289 F.3d 753, 757 (Fed. Cir. 2002). Where, as here,

Court No. 06-00329                                                                                            Page 4

"the nature of the merchandise is undisputed, . . . the classification issue collapses entirely into a question of law," and the court reviews Customs' classification decision de novo. Cummins Inc. v. United States, 454 F.3d 1361, 1363 (Fed. Cir. 2006).

## DISCUSSION

The General Rules of Interpretation ("GRIs") of the HTSUS direct the proper classification of merchandise entering the United States. Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998). Under GRI 1, HTSUS, "classification shall be determined according to the terms of the headings and any relevant section or chapter notes[.]"

Heading 2008, HTSUS, applies to "nuts, . . . otherwise prepared or preserved, whether or not containing added sugar or other sweetening matter or spirit, not elsewhere specified or included: Nuts, . . . whether or not mixed together," subheading 2008.19 applies to nuts "[o]ther [than peanuts], including mixtures," and subheading 2008.19.40 applies to "[a]lmonds." Heading 2008, HTSUS, is the only tariff provision that describes the nature of Almond Crunch, which is a mixture of prepared almonds containing added sugar and other sweetening matter. Mrs. May's concedes that Almond Crunch is classifiable under subheading 2008.19.40, HTSUS, if it cannot be classified under subheading 9802.00.50, HTSUS, as an altered article. (See Pl.'s Mem. of Law in Supp. of Its Mot. for Summ. J. & in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Br.") 5.)

Heading 9802, HTSUS, provides for a reduced duty on articles returned to the United States after having been exported for alterations. U.S. note 1 to Chapter 98 of the HTSUS states: "The provisions of this chapter are not subject to the rule of relative specificity in [GRI] 3(a). Any article which is described in any provision in this chapter is classifiable in said

provision if the conditions and requirements thereof and of any applicable regulations are met." Therefore, if Almond Crunch is an article returned to the United States after being exported for alterations, it would be classified under heading 9802, HTSUS, specifically under subheading 9802.00.50, not under heading 2008.

Under subheading 9802.00.50, HTSUS, "[c]hanges and additions to an article constitute alterations so long as the article has not lost its identity or has not been converted into something else." Chevron Chem. Co. v. United States, 59 F. Supp. 2d 1361, 1369 (CIT 1999). Alterations, however, "can only be made to finished articles." Id. An article is "finished" if it is "suitable for its ultimate intended use." Id. at 1370. Alterations "do not include intermediate processing operations which are performed as a matter of course in the preparation or the manufacture of finished articles." Dolliff & Co. v. United States, 599 F.2d 1015, 1019 (C.C.P.A. 1979).

Mrs. May's claims that Almond Crunch is classifiable under subheading 9802.00.50, HTSUS, because the processing of the almonds in China was a mere alteration. (Pl.'s Br. 5–18.) Mrs. May's claims that the raw almonds, after they were shelled, were "finished" because their ultimate intended use was for eating, and that they were suitable for that use when they were exported from the United States. (Id. at 6–10.) Mrs. May's also claims that the raw almonds did not lose their identity after the processing in China because the processing was not a substantial transformation under the country-of-origin marking statute and did not change the tariff classification of the almonds. (Id. at 11–12, 14–17.)

Here, the raw California almonds were converted into Almond Crunch, a sweet almond brittle snack. Although both raw almonds and Almond Crunch may be eaten, raw

almonds are not commercially interchangeable with, or suitable to be sold as, Almond Crunch. (Def.'s Statement of Facts ¶ 16; Pl.'s Resp. Statement of Facts ¶ 16; Wong Dep. 28:25–29:5.) Because the raw almonds were not suitable for their ultimate intended use as Almond Crunch, or any product similar thereto, when they were exported to China, they were not finished articles. The processing in China, especially the mixing of the almonds with rice malt, sugar, and salt, was necessary to convert the almonds into almond brittle, and therefore was intermediate processing performed as a matter of course in the preparation or the manufacture of the finished Almond Crunch, not an alteration.[3] See Chevron, 59 F. Supp. 2d at 1370 (holding that alpha olefin fraction exported from the United States was "unfinished" and that manufacturing in France was intermediate processing, not an alteration, because the product did not contain the benzene rings that the final product, alkylbenzene sulfonic acids, contained); see also Dolliff, 599 F.2d at 1017, 1019 (holding that fabrics exported from the United States as greige goods were "unfinished" and that dyeing and chemical treatments in Canada rendering the fabric suitable for manufacture into curtains were intermediate processing, not alterations); Guardian Indus. Corp. v. United States, 3 CIT 9, 12 (1982) (holding that raw annealed glass articles exported from the United States were unfinished because they were unsuitable for their intended

---

[3] Mrs. May's asserts that the processing in China adds negligible value, as "[t]he sugar and rice malt . . . is approximately 7% by volume," and "[t]he cost breakdown to manufacture a 28 ounce package of Almond Crunch is $6.10 with the almonds costing $5.08." (Pl.'s Br. 17.) Although the volume of those ingredients and the cost of processing were relatively low compared to the cost and volume of the almonds, the ingredients and processing converted the almonds into almond brittle and increased the value of the almonds from $5.08 to approximately $11.00 per 28-ounce package of Almond Crunch, which is sold at a total profit of 30–50%. (See Kim Dep. 47:17–48:9, Feb. 22, 2008, Def.'s Mot. for Summ. J. Ex. A.) The value added in China therefore was not negligible.

use as sliding glass patio doors and that tempering in Canada was not an alteration).

Mrs. May's mistakenly relies on prior Customs ruling letters in arguing that the almonds became finished articles after they were shelled in the United States. (See Pl.'s Br. 8–10.) Although Customs has found that shelling is an operation that exceeds an alteration, HQ 555246 (Apr. 12, 1989); HQ 554834 (May 25, 1988), Customs has also found that roasting, salting, sugar-coating, or otherwise flavoring peanuts also exceeds an alteration, HQ 558797 (Jan. 20, 1995); HQ 554934 (Apr. 3, 1989). Such rulings are consistent with the conclusion that the manufacturing of Almond Crunch in China also exceeds an alteration.

Mrs. May's also mistakenly relies on Customs' ruling letters NY L88301 and NY L82122 determining that the subject merchandise "retains its identity as U.S. almonds" and did not undergo a substantial transformation under the country-of-origin marking statute. (See Pl.'s Br. 14–17.) Such determinations do not require a finding that Almond Crunch is classifiable under subheading 9802.00.50, HTSUS, because the country-of-origin marking statute is distinct from the HTSUS and serves different purposes. See Tropicana Prods., Inc. v. United States, 789 F. Supp. 1154, 1158 (CIT 1992) ("[T]he criterion of whether goods have been 'manufactured' serves different purposes under different statutes . . . ; substantial transformation criteria cannot be applied indiscriminat[e]ly in the identical manner across the entire spectrum of statutes for which it is necessary to determine whether merchandise has been 'manufactured.'").

Finally, Mrs. May's unpersuasively asserts that the manufacturing in China was not an alteration because it did not result in a change in tariff classification. (See Pl.'s Br. 11–12.) Initially, the raw, shelled almonds exported from California might have fallen within heading 0802, HTSUS, which applies to "[o]ther nuts, [including almonds], whether or not

shelled or peeled,"[4] rather than heading 2008, which applies to prepared or preserved nuts. The court, however, need not determine whether the almonds exported to China were subject to the same tariff classification as Almond Crunch because such a determination would not even support the argument that Almond Crunch falls within subheading 9802.00.50, HTSUS. Although cases applying the predecessor provisions to 9802.00.50 have held that processing that results in a tariff classification change exceeds an alteration, see United States v. J.D. Richardson Co., 36 C.C.P.A. 15, 18–19 (1948); Guardian, 3 CIT at 15–16, no case has held that processing that does not result in a tariff classification change is merely an alteration. To the contrary, Doliff held that processing may exceed the scope of an alteration even if the merchandise as exported and as returned falls under the same tariff classification. See 599 F.2d at 1020.

## CONCLUSION

Because the manufacturing of the California almonds into Almond Crunch in China was more than a mere alteration, the subject merchandise is not classifiable under subheading 9802.00.50, HTSUS.[5] Mrs. May's concedes that if subheading 9802.00.50, HTSUS,

---

[4] The relevant portion of Chapter 8 of the HTSUS reads:

```
0802        Other nuts, fresh or dried, whether or not shelled or peeled:
                    Almonds:
            . . . .
0802.12.00                  Shelled . . . .
```

[5] Because the court concludes that Almond Crunch does not fall within subheading 9802.00.50, HTSUS, the court need not examine the issue of whether Mrs. May's is barred from receiving the duty benefit under that subheading for failure to report the value of the processing in China or submit documentation required under 19 C.F.R. § 10.8. See LeGran Mfg. Co. v. United States, 59 Cust. Ct. 58, 60 (1967) ("While defendant's brief raises a subsidiary issue concerning the importer's failure to comply with [19 C.F.R. § 10.8], we need reach that question
(continued...)

Court No. 06-00329                                                                                               Page 9

does not apply, subheading 2008.19.40, HTSUS, applies. Accordingly, Customs' classification of the subject merchandise under subheading 2008.19.40, HTSUS, is sustained. The defendant's motion for summary judgment is granted, and the plaintiff's cross-motion for summary judgment is denied.

                                                                                                                                         /s/ Jane A. Restani
                                                                                                                                            Jane A. Restani
                                                                                                                                             Chief Judge

Dated this 1st day of May, 2009.
New York, New York.

---

[5](...continued)
only if we find that the imported articles were in fact no more than repaired or altered after being exported from the United States.").

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MAY FOOD MANUFACTURING dba<br>MRS. MAY'S NATURALS,<br><br>      Plaintiff,<br><br>    v.<br><br>UNITED STATES,<br><br>      Defendant. | Before: Jane A. Restani, Chief Judge<br><br>Court No. 06-00329 |

## JUDGMENT

This case having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now therefore, in conformity with said decision, it is hereby

ORDERED that Defendant United States' Motion for Summary Judgment is granted, and Plaintiff May Food Manufacturing doing business as Mrs. May's Naturals' Cross-Motion for Summary Judgment is denied. Customs' classification of the subject merchandise under subheading 2008.19.40, HTSUS, is sustained.

                /S/  Jane A. Restani
                    Chief Judge

Dated this 1st day of May, 2009.
New York, New York.

## NOTICE OF ENTRY AND SERVICE

      This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

      Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

      Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

      Tina Potuto Kimble
      Clerk of the Court

Date: _____    By: _____
                                                             Deputy Clerk